Electronically Filed
Supreme Court
SCAP-17-0000899
26-JUN-2019
09:40 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC.,
Plaintiff-Appellant,

vs.

CITY AND COUNTY OF HONOLULU and
HONOLULU POLICE COMMISSION,
Defendants-Appellees.

SCAP-17-0000899

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-17-0000899; CIV. NO. 1CC17-1-000142)

JUNE 26, 2019

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ.,
AND CIRCUIT JUDGE EDDINS, IN PLACE OF NAKAYAMA, J., RECUSED

## I.  INTRODUCTION

The issues in this case arise from three closed meetings the Honolulu Police Commission held in January 2017 concerning then-Chief of Police Louis Kealoha, who had received

notice that he was the target of a federal criminal investigation.  The Police Commission cited the need to protect Kealoha's privacy and to confer with its attorney when closing the meetings to the public.  At the end of the third meeting, the Commission approved an agreement for Kealoha's retirement.

Several days later, Plaintiff-Appellant Civil Beat Law Center for the Public Interest, Inc. (Civil Beat) filed a complaint against the Honolulu Police Commission and the City and County of Honolulu (collectively, the Appellees) in the Circuit Court of the First Circuit (circuit court).  Civil Beat pled six counts, seeking declaratory rulings interpreting Hawai'i's Sunshine Law, and finding violations of the Sunshine Law.  In addition to declaratory relief, Civil Beat sought an order requiring the Appellees to attend Sunshine Law training, releasing the Commission's executive meeting minutes for the three closed meetings, and invalidating the Commission's retirement agreement with Kealoha.  Civil Beat did not join Kealoha as a party to the action.

The Appellees filed a motion to dismiss, which the circuit court granted on all counts.  Civil Beat appealed to the Intermediate Court of Appeals (ICA), and we accepted transfer of this case to resolve matters of first impression concerning the meaning and scope of the Sunshine Law's open meeting requirement, personnel-privacy exception, and attorney-client exception, and the extent to which closed meetings must conform with these

2

exceptions.

We hold that the circuit court erred in dismissing Civil Beat's complaint. The Sunshine Law does not <u>require</u> that meetings related to personnel matters be closed to the public; rather, that decision is discretionary, provided that certain statutory requirements are met. Nor does the Sunshine Law subject board members to criminal penalties for holding an open meeting. We resolve these and other questions of law in this appeal, and remand Civil Beat's claims regarding alleged violations of the Sunshine Law, with instructions to order that Kealoha be made a party, or, if he cannot be so joined, the court shall determine whether in equity and good conscience the action should proceed in any form among Civil Beat and the Appellees, or whether it must be dismissed.

## II.  BACKGROUND

### A.  Factual Background

Because we are reviewing the circuit court's order on a motion to dismiss, our review is "strictly limited to the allegations of the complaint, and we must deem those allegations to be true." <u>In re Estate of Rogers</u>, 103 Hawai'i 275, 280-81, 81 P.3d 1190, 1195-96 (2003) (quoting <u>Blair v. Ing</u>, 95 Hawai'i 247, 252, 21 P.3d 452, 457 (2001)).

### 1.  The Target Letter

In December 2016, Kealoha received an FBI Target Letter from the U.S. Attorney's Office notifying him that he was the

target of a federal grand jury investigation.  In response to the Target Letter, Kealoha voluntarily placed himself on temporary restricted duty.  The same day, the Chair of the Police Commission acknowledged the Target Letter and confirmed that Kealoha placed himself on leave.  The Chair said that the Commission would consider the issue at its next meeting on January 4, 2017.

**2.  The Commission Discusses the "Status of the Chief of Police" in Executive Session**

The Commission's January 4, 2017, meeting agenda indicated that the "Status of the Chief of Police" would be discussed in an executive session, closed to the public, pursuant to HRS § 92-5(a)(2) and (4), respectively, for the Commission to consider personnel actions "where consideration of matters affecting privacy will be involved" and to consult with the Commission's attorneys.  During the public portion of the Commission's January 4 meeting, the Chair stated that "because of Hawaiʻi Revised Statute on personnel matters, we have to discuss [the Police Chief] in executive session."

The Commission continued the January 4 meeting regarding the "Status of the Chief of Police" to January 6, 2017, and on that day met solely in executive session.  After the January 6 executive session, the Commission publicly announced that it had come to "an agreement in principle on [the Chief of Police's] retirement."

4

**3.    The City Council is Denied a Briefing on the Retirement Agreement**

On January 12, 2017, the Honolulu City Council requested a briefing from the Commission on the retirement agreement.  The next day, the Chair of the Commission declined the Council's request, stating that according to the Sunshine Law, "only the individual [employee] concerned may request an open meeting" when personnel matters involving the hire, evaluation, dismissal, or discipline of that employee are discussed.  The Chair stated that "without the consent of Chief Kealoha, the Commission cannot discuss this personnel matter in open session."  The Chair indicated that the Commission members may be subject to criminal penalties if personnel matters were discussed in open session.[1]

**4.    The Commission Approves a Retirement Agreement with Kealoha in Executive Session**

The Commission's agenda for its next meeting on January 18, 2017 stated again that the "Status of the Chief of Police" would be discussed in executive session pursuant to HRS § 92-5(a)(2) and (4) for the Commission to consider personnel actions "where consideration of matters affecting privacy will be involved" and to consult with the Commission's attorneys.  At the January 18 meeting, the Commission voted in executive session to approve a retirement agreement with Kealoha.

---

[1]    The complaint did not provide a direct quotation of this statement.

B.    Circuit Court Proceedings

    1.    Civil Beat's Complaint

On January 26, 2017, Civil Beat filed a complaint in circuit court against the Appellees.[2]  Civil Beat sought declaratory and injunctive relief, including voiding final action taken by the Commission.  Civil Beat asserted six claims:

| | |
|---|---|
| Count 1: | Sunshine Law does not require closed meetings; |
| Count 2: | Board members cannot be criminally prosecuted for holding an open Sunshine Law meeting; |
| Count 3: | Not all personnel actions may be discussed in closed session; |
| Count 4: | Personnel evaluations of a police chief must be discussed in open session; |
| Count 5: | The City and the Commission violated the Sunshine Law on January 4 and 6, 2017. |
| Count 6: | The City and the Commission violated the Sunshine Law on January 18, 2017. |

    a.    Counts 1 and 2

In Counts 1 and 2, Civil Beat sought declaratory relief interpreting the Sunshine Law's open meeting requirement, HRS § 92-3, and criminal penalties provision, HRS § 92-13.

In Count 1, Civil Beat alleged that the Commission misinterpreted the Sunshine Law's open meeting requirement and that Commission members incorrectly believed that they were required to enter into an executive session to discuss the Chief

_____

    [2]    The Honorable Virginia L. Crandall presided.

6

of Police.  Civil Beat asserted that when voting to enter executive session, members of the Commission "did not believe that they had the option to vote for an open session – stating that 'without the consent of Chief Kealoha, the Commission cannot discuss this personnel matter in open session.'"  Civil Beat sought an order "declaring that the Sunshine Law does not require boards to enter into executive session[.]"

In Count 2, Civil Beat asserted that the Commission misinterpreted the Sunshine Law's criminal penalties provision because Commission members "believed that they were subject to criminal prosecution if they discussed the matter in open session."  Civil Beat sought "an order declaring that the Sunshine Law does not subject Sunshine board members to criminal prosecution under HRS § 92-13 for holding an open meeting[.]"

**b.    Counts 3 and 4**

In Counts 3 and 4, Civil Beat sought declaratory relief interpreting the Sunshine Law's personnel-privacy exception, HRS § 92-5(a)(2), and applying this interpretation to require the "Status of the Chief of Police" to be discussed in open meetings in all circumstances as a matter of law.

In Count 3, Civil Beat alleged that Commission members misinterpreted the personnel-privacy exception "to permit an executive session "for any discussion that involved 'the hire, evaluation, dismissal, or discipline of an officer or employee or of charges brought against the officer or employee' . . .

7

regardless whether 'consideration of matters affecting privacy will be involved.'"  Civil Beat contended that HRS § 92-5(a)(2) "requires an analysis of whether the personnel discussion involves private matters and a balancing of the privacy interests against the public interests in disclosure."

In Count 4, Civil Beat applied this balancing test to argue that, as a matter of law, the "Status of the Chief of Police" cannot be discussed in executive session due to the public's compelling interest in monitoring the person serving as Chief of Police.  Civil Beat argued that "[p]rivacy is not an absolute when it concerns conduct of government officials" and noted that the Chief of Police, "unlike most government employees," performs "a critical function to our community that impacts thousands of people daily."  Civil Beat thus argued that the public has a compelling interest "in monitoring both the Chief of Police and the Commission," and that this "outweighs any privacy interests the Chief of Police may have" in discussions regarding the "Status" of this position.  "To prevent future violations of the Sunshine Law," Civil Beat requested "an order declaring that discussion of the 'Status of the Chief of Police' is not a matter 'where consideration of matters affecting privacy will be involved' and thus cannot be held in executive session."

c.    **Counts 5 and 6**

In Counts 5 and 6, Civil Beat alleged that the Commission's discussions concerning the "Status of the Chief of

8

Police" in the January 4, 6, and 18 executive sessions violated section 92-5(b) of the Sunshine Law because portions of these discussions were not "directly related" to any permissible exception.

In Count 5, Civil Beat first raised the issue of whether HRS § 92-5(a)(2), the personnel-privacy exception, was permissibly invoked in the specific circumstances here. Unlike in Count 4, Civil Beat's allegations in Count 5 addressed Kealoha's privacy interests, the Target Letter, and the nature of the Commission's deliberations. Civil Beat claimed that the Commission did not discuss "any highly sensitive information" concerning Kealoha in the executive meetings. Rather, "the only development presented to the Commission was the FBI Target Letter that was already public knowledge." Civil Beat argued that "[t]he Commission's deliberations about what it planned to do about the FBI Target Letter, the evaluative criteria it considered, the options it weighed, and how it approached the situation are not private merely because it may affect [Kealoha's] reputation or may be embarrassing." Moreover, according to Civil Beat, any privacy interests were outweighed by the public interest in Kealoha's evaluation.

As such, Civil Beat claimed, "[o]n information and belief," that "portions of the January 4 executive session, continued on January 6, concerning the 'Status of the Chief of Police' were not 'directly related' to 'consideration of matters

9

affecting privacy.'"  Additionally, Civil Beat alleged that portions of the same January 4 executive session, continued on January 6, "were not 'directly related' to questions for the Commission's attorney 'pertaining to the board's powers, duties, privileges, immunities, and liabilities.'"  Civil Beat thus argued that the closed meetings "exceeded the scope of any permissible [exception]."  Civil Beat sought an order declaring that the Commission violated the Sunshine Law, and "requiring disclosure of any audio or other recordings and any meeting minutes or similar record" of the first two executive meetings at issue.

Count 6 was substantially similar to Count 5, though it focused on matters from the Commission's January 18, 2017, executive meeting, including "the basis for [Kealoha's] retirement, how the Commission evaluated the terms of that retirement, and the reasons that the Commission chose to spend public monies on that retirement[.]"  Like in Count 5, Civil Beat alleged that portions of the January 18 executive meeting were not "directly related" to "consideration of matters affecting privacy" or to questions for the Commission's attorney "pertaining to the board's powers, duties, privileges, immunities, and liabilities."  As such, Civil Beat argued that the Commission "exceeded the scope of any permissible [exception]."

In addition to seeking declaratory relief and

10

disclosure of the January 18 executive meeting minutes, Civil Beat sought an order "voiding [the Commission's] approval of the retirement agreement," pursuant to HRS § 92-11.

### 2. Dismissal of the Complaint

On February 16, 2017, the Appellees filed a motion to dismiss the complaint pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6) (2000). The Appellees argued that there was no controversy to resolve in Counts 1 and 2, and that Counts 3 to 6 relied on incorrect interpretations of the Sunshine Law. In opposition, Civil Beat argued that the Appellees misconstrued the law and that they "move to dismiss by simply ignoring the facts as alleged." Regarding Counts 5 and 6 in particular, Civil Beat argued that it would be inappropriate to dismiss the matter due to the presence of disputed issues of fact concerning the scope of the Commission's discussions.

After a hearing on the motion, the circuit court entered a written order dismissing the complaint. The order provided as follows:

> 1. As to Counts [1] and [2], there is no dispute that Defendant Honolulu Police Commission (the "Commission") followed the required procedures and properly met in executive session pursuant to Hawaii Revised Statutes ("HRS") §§ 92-4, 92-5(a)(2), and 92-5(a)(4) to protect privacy interests of the Honolulu Chief of Police and to preserve the attorney-client privilege between the Commission and its counsel. The Commission had the authority to and did meet in executive session to preserve its attorney-client privilege, even if the Commission was not required to meet in executive session to discuss the status of the Honolulu Chief of Police. Therefore, Counts [1] and [2] are dismissed as moot.

11

2.    As to Counts [3] and [4], HRS Chapter 92 does not require a "balancing of private interest against the public interest in disclosure" in deciding whether a board may properly meet in executive session.  The balancing test set forth in HRS Chapter 92F applies to the "disclosure of a government record" and not whether the Commission properly decided to meet in executive session.  The Commission properly entered into executive sessions pursuant to HRS §§ 92-4, 92-5(a)(2), and 92-5(a)(4).  As such, Counts [3] and [4] are dismissed for failure to state a claim upon which relief can be granted.

3.    Counts [5] and [6] set forth conclusory, rather than factual, allegations and are therefore dismissed without prejudice for failure to state a claim upon which relief can be granted.

On November 30, 2017, the circuit court entered final judgment "in favor of Defendants City and County of Honolulu and Honolulu Police Commission on all claims for relief" in Civil Beat's complaint.

## C.    Appellate Proceedings

Civil Beat timely appealed the circuit court's judgment to the ICA, and we later accepted transfer of this case.

Civil Beat raises three issues on appeal:

[1].   Whether the public is entitled to declaratory relief to prevent violations of the Sunshine Law by correcting a government board's erroneous understanding that its vote to enter executive session was meaningless because the Sunshine Law required a closed meeting and permitted criminal prosecution of the board members for holding an open meeting (Counts [1] and [2]).

2.    Whether the circuit court erred in holding that the Sunshine Law personnel privacy exception broadly applies to all discussion of personnel matters concerning the chief of police regardless whether "consideration of matters affecting privacy will be involved" (Counts [3]

12

and [4]).

[3]. Whether a complainant alleging that a government board exceeded the scope of permissible exceptions to the Sunshine Law during a closed meeting (Counts [5] and [6]) may be dismissed as a matter of law for failure to state a cause of action under HRS § 92-12.

### III. STANDARDS OF REVIEW

#### A. Motion To Dismiss

A circuit court order granting a motion to dismiss is reviewed de novo. Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 401, 391 P.3d 1, 8 (2017). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief." In re Estate of Rogers, 103 Hawaiʻi 275, 280, 81 P.3d 1190, 1195 (2003) (quoting Blair v. Ing, 95 Hawaiʻi 247, 252, 21 P.3d 452, 457 (2001)). Our review is "strictly limited to the allegations of the complaint," which we view in the light most favorable to the plaintiff and deem to be true. Id. at 280-81, 81 P.3d at 1135-36 (quoting Blair, 95 Hawaiʻi at 252, 21 P.3d at 457). However, "the court is not required to accept conclusory allegations on the legal effect of the events alleged." Hungate, 139 Hawaiʻi at 401, 391 P.3d at 8.

#### B. Statutory Interpretation

"Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard." Nakamoto v. Kawauchi, 142 Hawaiʻi 259, 268, 418 P.3d 600, 609

13

(2018).

## C.   Indispensable Parties

"[W]here the trial court has made a determination as to a party's indispensability, appellate courts must review the trial court's decision for an abuse of discretion."  Marvin v. Pflueger, 127 Hawai'i 490, 503, 280 P.3d 88, 101 (2012) (citations omitted).  However, "where the appellate court raises the issue [of indispensable parties] itself for the first time on appeal, it follows that the appellate court must perform a de novo Rule 19 analysis, there being no analysis from the trial court to review."  Id.

### IV.   DISCUSSION

We resolve Counts 1 to 4 in the present appeal based purely on principles of statutory interpretation.  The circuit court erred in dismissing Counts 1 and 2 as moot, and we resolve these counts by declaring that the Sunshine Law does not require closed meetings, and that the Sunshine Law does not subject board members to criminal prosecution under HRS § 92-13 for holding an open meeting.  We resolve Counts 3 and 4 by declaring that the Sunshine Law's personnel-privacy exception does not include a balancing test, but requires the person at issue to have a legitimate privacy interest in the matters discussed.

We vacate and remand Counts 5 and 6.  The circuit court improperly applied a heightened pleading standard to dismiss these counts, which sufficiently alleged violations of the

14

Sunshine Law.  We remand Counts 5 and 6 with instructions to order that Kealoha be made a party, or, if he cannot be so joined, the circuit court shall determine whether in equity and good conscience the action should proceed in any form among Civil Beat and the Appellees, or whether it must be dismissed.

**A.    Counts 1 and 2**

The circuit court erred in dismissing Counts 1 and 2 as moot.  In both counts, Civil Beat established a live controversy regarding interpretation of the Sunshine Law's open meetings requirement, see HRS §§ 92-3 to -5, and its criminal penalties provision, see HRS § 92-13.

In Count 1, Civil Beat alleged that Commission members incorrectly believed that the Sunshine Law required personnel matters to be discussed in executive session, and that the Commission could discuss such matters in an open meeting only with the consent of the person being discussed.  In Count 2, Civil Beat alleged that Commission members incorrectly believed that they may be criminally prosecuted under the Sunshine Law for holding an open meeting without Kealoha's consent.  While Civil Beat acknowledged that the Sunshine Law provides criminal penalties for "[a]ny person who willfully violates any [of its] provisions," HRS § 92-13, Civil Beat argued that the Commission's belief was erroneous because holding an open meeting does not violate the Sunshine Law.  For both counts, Civil Beat sought declaratory relief "[t]o prevent future violations" by correcting

15

the Commission's misunderstanding of the law.

In their motion to dismiss, consistent with their appellate briefs, the Appellees claimed that no controversy existed by avoiding and recharacterizing Civil Beat's arguments. Rather than addressing whether the Sunshine Law requires closed meetings, the Appellees argued that the "Commission was authorized to conduct a meeting closed to the public under HRS § 92-5(a)(2) and (4) and followed the proper procedures to hold the executive meeting under HRS § 92-4." They argued that because the Commission satisfied statutory requirements, addressing "whether the Commission members had incorrect conceptions of the law" would be a needless academic exercise.

With regard to Count 2, the Appellees argued that there was "no dispute and no relief" because they "agree" with Civil Beat that Commission members were not subject to criminal penalties. They explained that they "agree that the members of the Police Commission were not subject to criminal prosecution because they followed the requirements of HRS § 92-4 and HRS § 92-5(a)(2) and (4) when convening the executive session," and because no one alleged a willful violation of the Sunshine Law. This did not address Civil Beat's argument in Count 2 that the Sunshine Law does not provide criminal penalties for holding an open meeting.

Furthermore, the Appellees argued that had any Commission members believed that they "may be subject to criminal

16

prosecution for violating the Sunshine Law by holding the subject discussion in an open meeting," such a belief aligned with guidance from the Office of Information Practices (OIP),[3] "that only the subject employee may request that a meeting under HRS § 92-5(a)(2) be open to the public[.]" (Citing OIP S. Memo 09-13, at 4).[4] The Appellees appeared to contend that because "only the subject employee may request that a meeting be open to the public," a meeting must be closed under section 92-5(a)(2) unless such a request is made. Under this theory, holding an open meeting without the employee's permission would appear to violate the Sunshine Law.

The Appellees did not assert that the complaint misrepresented the Commission's interpretation of the Sunshine Law, and they did not otherwise suggest that the Commission's interpretation of the Sunshine Law had changed since the events at issue took place. Moreover, in dismissing Counts 1 and 2 on

---

[3]     The OIP is the agency charged with administering the Sunshine Law. HRS § 92-1.5 (2012). "Opinions and rulings of the office of information practices shall be admissible in an action brought under this part and shall be considered as precedent unless found to be palpably erroneous." HRS § 92-12(d) (2012).

[4]     The Appellees cited the following excerpt from the OIP's informal opinion:

> Because OIP believes that an evaluation includes the possibility of termination, the agenda provided sufficient notice from which Dr. Shon could have exercised his right to require the BOE to consider his evaluation in an open meeting. Haw. Rev. Stat. §92-5(a)(2)("if the individual concerned requests an open meeting, an open meeting shall be held"). OIP does not interpret the Sunshine Law to require personal notice to the employee in addition to the public notice.

OIP S. Memo 09-13, at 4.

17

mootness grounds, the circuit court appeared to conclude that the Commission's interpretation of the Sunshine Law was not relevant, and that clarification of the Sunshine Law was therefore unnecessary.

"A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law." Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007) (emphasis omitted) (quoting Kemp v. State of Hawaiʻi Child Support Enforcement Agency, 111 Hawaiʻi 367, 385, 141 P.3d 1014, 1032 (2006)). "[A] case is not moot . . . so long as the plaintiff continues to suffer some harm that a favorable court decision would resolve." Hac v. Univ. of Hawaiʻi, 102 Hawaiʻi 92, 100, 73 P.3d 46, 54 (2003) (citation omitted). If the "requested remedies can be effectuated" for the plaintiff, the issues presented are still "live" for judicial resolution. Id. at 99, 73 P.3d at 53.

Civil Beat argued that declaratory relief clarifying the proper statutory construction of the Sunshine Law was necessary to prevent future harm to the public interest. However, the circuit court held that regardless of what Commission members believed about the Sunshine Law, the Commission properly convened the executive meetings under the attorney-client exception, and thus no harm to the public interest occurred. As such, the circuit court determined that no

18

relief was warranted. This was error, as it overlooked the parties' genuine dispute and did not acknowledge that declaratory relief would prevent future harm to the public interest.

The purpose of the Sunshine Law is to "protect the people's right to know[.]" HRS § 92-1(1). Government boards "are constrained at all times by the spirit and purpose of the Sunshine Law, as stated in HRS § 92-1." Kanahele v. Maui Cty. Council, 130 Hawaiʻi 228, 248, 307 P.3d 1174, 1194 (2013). Board members are required to understand the requirements of the Sunshine Law and act in good faith in accord with its spirit and purpose.

The Sunshine Law declares the policy "that the formation and conduct of public policy - the discussions, deliberations, decisions, and action of governmental agencies - shall be conducted as openly as possible." HRS § 92-1. The Sunshine Law implements this policy by establishing the presumption that all government board meetings will be open to the public. See HRS § 92-3 ("Every meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92-4 and 92-5."). Any permitted exceptions to the open meeting requirement, see HRS § 92-5(a),[5] must be narrowly construed, HRS § 92-1(3). If an

_____

[5] Boards may enter into an executive session only for the following purposes:

(continued...)

19

exception applies, a board "may hold a meeting closed to the public," HRS § 92-5(a) (emphasis added), but only if the board follows statutory procedures in closing the meeting, including "an affirmative vote, taken at an open meeting, of two-thirds of the members present," HRS § 92-4.[6]

---

[5](...continued)

(1) To consider and evaluate personal information relating to individuals applying for professional or vocational licenses cited in section 26-9 or both;

(2) To consider the hire, evaluation, dismissal, or discipline of an officer or employee or of charges brought against the officer or employee, where consideration of matters affecting privacy will be involved; provided that if the individual concerned requests an open meeting, an open meeting shall be held;

(3) To deliberate concerning the authority of persons designated by the board to conduct labor negotiations or to negotiate the acquisition of public property, or during the conduct of such negotiations;

(4) To consult with the board's attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities;

(5) To investigate proceedings regarding criminal misconduct;

(6) To consider sensitive matters related to public safety or security;

(7) To consider matters relating to the solicitation and acceptance of private donations; and

(8) To deliberate or make a decision upon a matter that requires the consideration of information that must be kept confidential pursuant to a state or federal law, or a court order.

HRS § 92-5(a).

[6]     HRS § 92-4 provides in full:

A board may hold an executive meeting closed to the public upon an affirmative vote, taken at an open meeting, of two-thirds of the members present; provided the affirmative vote constitutes a majority of the members to which the board is entitled. A meeting

(continued...)

20

Because the decision to close a meeting is discretionary, board members should thoughtfully weigh the interests at stake before voting. See OIP Op. No. 03-07, at 7 ("Boards should keep in mind the Sunshine Law's policy of openness and should not enter executive meetings unless necessary."). If board members misconstrue the Sunshine Law and take action based on these misconceptions, their conduct undermines the intent of the Sunshine Law and impairs the public's "right to know." HRS § 92-1. For this reason, the Sunshine Law provides people access to the courts to ensure that boards understand and comply with their Sunshine Law obligations. See HRS § 92-12(c) ("Any person may commence a suit . . . for the purpose of requiring compliance with or preventing violations of" the Sunshine Law). Civil Beat sought declaratory relief in Counts 1 and 2 in accord with this purpose, and was entitled to have these counts resolved.

To resolve Count 1, we recognize that the Sunshine Law does not require closed meetings when an exception applies, since the applicable provisions explicitly recognize that the decision to close a meeting is discretionary if certain conditions are met. See HRS § 92-4 ("A board may hold an executive meeting

---

[6](...continued)
closed to the public shall be limited to matters exempted by section 92-5. The reason for holding such a meeting shall be publicly announced and the vote of each member on the question of holding a meeting closed to the public shall be recorded, and entered into the minutes of the meeting.

closed to the public upon an affirmative vote, taken at an open meeting, of two-thirds of the members present; provided the affirmative vote constitutes a majority of the members to which the board is entitled.  A meeting closed to the public shall be limited to matters exempted by section 92-5."); HRS § 92-5 ("A board may hold a meeting closed to the public pursuant to section 92-4 for one or more of the following purposes[.]" (Emphasis added)).  As such, a board will not violate the Sunshine Law by holding an open meeting, so long as the board has complied with all other Sunshine Law requirements, such as sufficient notice. See HRS § 92-7.

We reject the Appellees' contention that when section 92-5(a)(2) applies, an open meeting may be held only upon the subject employee's request.  When section 92-5(a)(2) applies, "[a] board may hold a meeting closed to the public pursuant to section 92-4, . . . provided that if the individual concerned requests an open meeting, an open meeting shall be held[.]"  HRS § 92-5(a)(2) (emphasis added); see also OIP S. Memo 09-13, at 4 (recognizing that when section 92-5(a)(2) applies, an employee has the "right to require the [board] to consider [the employee's] evaluation in an open meeting").  This rule does not establish that an open meeting may be held only upon the subject employee's request.  Rather, it establishes that an open meeting must be held if such a request is made.  As such, this rule limits the applicability of an exception, and thus places no

22

limitation on the open meetings requirement.

To resolve Count 2, we recognize that pursuant to section 92-13, members of a government board may be prosecuted for willful violations of the Sunshine Law, and upon conviction, will be guilty of a misdemeanor and "may be summarily removed from the board unless otherwise provided by law."  HRS § 92-13. Because holding an open meeting does not violate the Sunshine Law, even when an exception under HRS § 92-5 is applicable, board members are not subject to criminal prosecution under section 92-13 for holding an open meeting.

**B.    Counts 3 and 4**

In dismissing Counts 3 and 4, the circuit court ruled that "HRS Chapter 92 does not require a 'balancing of private interests against the public interest in disclosure' in determining whether a board may properly meet in executive session.'"  We affirm this ruling on grounds of statutory interpretation.

In Count 3, Civil Beat sought a declaration defining the scope of the personnel-privacy exception under section 92-5(a)(2) as one that "requires an analysis of whether the personnel discussion involves private matters and a balancing of the privacy interests against the public interest in disclosure[.]"  As further discussed below, we hold that the Sunshine Law's personnel-privacy exception does not include a public interest balancing test.  As such, the circuit court

23

properly ruled against Civil Beat on Count 3.

In Count 4, Civil Beat argued that given the overriding "public interest in monitoring both the Chief of Police and the Commission," the circuit court should declare that "discussion of the 'Status of the Chief of Police' is not a matter 'where consideration of matters affecting privacy will be involved' and thus cannot be held in executive session" as a matter of law. However, because section 92-5(a)(2) does not include a balancing test, the public interest in monitoring the Chief of Police would not preclude the Commission from entering into executive session to consider matters affecting the legitimate privacy interests of the Chief of Police. Count 4, which relied on a balancing theory, was thus properly dismissed.

Moreover, the applicability of section 92-5(a)(2) must be determined on a case-by-case basis, as an analysis of privacy requires a specific look at the person and the information at issue. Although Count 4 referred to "the Chief of Police" and "the Commission," the allegations therein were not grounded on the facts of this case concerning the Commission's deliberations about the Target Letter and Kealoha's retirement taking place January 4, 6, and 18, 2017. Without knowing the content of future deliberations about future Chiefs of Police, courts cannot rule as a matter of law that "matters affecting privacy" are not involved. We therefore reject Count 4 on this basis as well.

Finally, while the circuit court properly held that the

24

personnel-privacy exception does not include a balancing test, the circuit court improperly concluded in one part that "[t]he Commission properly entered into executive sessions pursuant to HRS §§ 92-4, 92-5(a)(2), and 92-5(a)(4)." The personnel-privacy exception requires the presence of legitimate privacy interests, and an ipse dixit claim to privacy in personnel discussions does not establish that the exception was properly invoked. See HRS § 92-1(3) ("The provisions providing for exceptions to the open meeting requirements shall be strictly construed against closed meetings."); cf. Sapp v. Wong, 62 Haw. 34, 609 P.2d 137 (1980) (recognizing that limitations restricting the operation of the attorney-client privilege "must be assiduously heeded" and that accordingly, "[a]n ipse dixit claim of privilege is insufficient"). Even though a matter involves the personnel status of an employee, it does not necessarily follow that a legitimate privacy interest was impacted. The record lacks a sufficient factual basis to support the circuit court's conclusion that the Commission properly invoked the personnel-privacy exception. We therefore vacate this portion of the order.[7]

---

[7] Because Counts 3 and 4 concerned issues of statutory interpretation and allegations regarding hypothetical circumstances, the circuit court's determination that the Commission properly entered into an executive session pursuant to HRS § 92-5(a)(2) was not necessary to dispose of Counts 3 and 4 in favor of the Appellees. Because this conclusion is more relevant to Civil Beat's claims in Counts 5 and 6, we address this issue when discussing Counts 5 and 6 in part IV.C.

## 1. The Personnel-Privacy Exception

A board may enter into an executive session "[t]o consider the hire, evaluation, dismissal, or discipline of an officer or employee or of charges brought against the officer or employee, where consideration of matters affecting privacy will be involved[.]"  HRS § 92-5(a)(2).  Understanding that this exception must be "strictly construed against closed meetings," HRS § 92-1(3), we construe the first and second clause in section 92-5(a)(2) as separate requirements.  Accordingly, not all personnel discussions are exempt from the open meeting requirement.

To be within the scope of the exception, discussions and deliberations about personnel must relate to "the hire, evaluation, dismissal, or discipline" of personnel, or to "charges brought against" personnel.  HRS § 92-5(a)(2).  Also, such discussions and deliberations must "involve[]" the "consideration of matters affecting privacy[.]"  Id.  Thus, unless "matters affecting privacy will be involved" in a board's discussion, personnel matters should presumptively be discussed in an open meeting.  See HRS § 92-3.

The parties dispute the meaning of the "matters affecting privacy" clause of section 92-5(a)(2).  The Sunshine Law does not describe the "matters" that may "affect[] privacy," or set forth a test, aside from this language, to determine the meaning and scope of the personnel-privacy exception.

26

### a.    HRS § 92-5(a)(2) does not include a balancing test

Civil Beat argues that the Sunshine Law's personnel-privacy exception should be construed as equivalent to the privacy balancing test set forth in the Uniform Information Practices Act (UIPA).[8]  We decline to adopt this interpretation.  The UIPA's privacy exception applies when disclosure of a government record would constitute a "clearly unwarranted invasion of personal privacy."  HRS § 92F-13(1).  In Peer News LLC v. City & County of Honolulu, we explained that first, privacy interests must be identified, and second, privacy interests "must be balanced against the public interest in disclosure to determine whether disclosure of the information would constitute a 'clearly unwarranted invasion of privacy.'"  138 Hawai'i 53, 67-68, 376 P.3d 1, 15-16 (2016) (citing HRS § 92F-14).  Neither the language nor structure of the Sunshine Law's personnel-privacy exception aligns with the UIPA in this regard.

The plain language of the privacy clause in section 92-5(a)(2) of the Sunshine Law differs considerably from that in

_____

[8]    The UIPA establishes the public's right to access government records.  See HRS § 92F-2.  It provides "that the formation and conduct of public policy - the discussions, deliberations, decisions, and action of government agencies - shall be conducted as openly as possible."  Id.  To this end, the UIPA establishes the presumption that "[a]ll government records are open to public inspection unless access is restricted or closed by law."  HRS § 92F-11(a).

The UIPA also recognizes that "[t]he policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy, as embodied in section 6 and section 7 of [A]rticle I of the [C]onstitution of the [S]tate of Hawai'i."  HRS § 92F-2.  Thus, disclosure is not required if it "would constitute a clearly unwarranted invasion of personal privacy[.]"  HRS § 92F-13(1).

sections 92F-13(1) and 14 of the UIPA. The personnel-privacy exception plainly allows a closed meeting if "consideration of matters affecting privacy will be involved" in certain personnel discussions. HRS § 92-5(a)(2) (emphasis added). The UIPA's plain language, on the other hand, allows a record to be withheld from the public if the record contains information that, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy," HRS § 92F-13(1), and the UIPA sets forth an express test for determining whether this standard is met, see HRS § 92F-14.

In addition to these differences in plain language, the Sunshine Law and the UIPA's exceptions differ in structure. The UIPA establishes a distinct process for first identifying and evaluating privacy interests, and second, determining whether disclosure would constitute a "clearly unwarranted invasion" of these interests. HRS § 92F-14. The Sunshine Law lacks a similar process for determining whether "matters affecting privacy" are involved in a personnel discussion.

The Sunshine Law and the UIPA's exceptions also differ in the mode of their application. When a UIPA exception applies, the record is directly exempted from the disclosure requirement. See, e.g., HRS § 92F-13(1) ("This part shall not require disclosure of: (1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." (Emphasis added)). The Sunshine Law, on the other hand, does not

provide automatic exceptions, as boards have the discretion to determine whether a closed meeting must be held.  See HRS § 92-4.

When the personnel-privacy exception applies, a government board may decide to close a meeting to engage in deliberations without risking the invasion of fundamental privacy rights.[9]  Understanding that "the proverbial bell cannot be 'unrung' with regard to protecting individual privacy interests," OIP S. Memo 14-7, at 7, boards may properly make this decision before such deliberations take place.

In sum, the Sunshine Law and UIPA differ in both their plain language and structure.  While they share a similar policy intent, they are different statutes.  In light of their distinctions, we do not read the UIPA's balancing test into the Sunshine Law's personnel-privacy exception.  We adhere to the plain language of this exception, which allows specific personnel discussions to take place in a closed meeting, conditioned on whether "consideration of matters affecting privacy will be involved."  HRS § 92-5(a)(2).

---

[9]  Article 1, section 6 of the Hawai'i Constitution provides, "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."  Haw. Const. art. 1, § 6. This provision protects the right to privacy in the "informational" sense. See Cohan v. Ayabe, 132 Hawai'i 408, 322 P.3d 948 (2014); Stand. Comm. Rep. No. 69, in Proceedings of the Constitutional Convention of Hawai'i of 1978 (Proceedings), Vol. I, at 674.  It "concerns the possible abuses in the use of highly personal and intimate information in the hands of government or private parties[.]"  Nakano v. Matayoshi, 68 Haw. 140, 147, 706 P.2d 814, 818 (1985) (quoting Comm. Whole Rep. No. 15, in Proceedings, Vol. 1, at 1024).  In essence, it is "the right of an individual not to have his private affairs made public by the government."  Id. at 148 n.6, 706 P.2d at 819 n.6 (quoting Whalen v. Roe, 429 U.S. 589, 599 n.24 (1977)).

**b.  HRS § 92-5(a)(2) requires the person at issue to have a legitimate privacy interest in the matters discussed**

For "matters affecting privacy" to be involved in a personnel discussion, HRS § 92-5(a)(2), the person at issue must have a "legitimate expectation of privacy" in the information, Nakano v. Matayoshi, 68 Haw. 140, 148, 706 P.2d 814, 819 (1985).

People have a legitimate expectation of privacy in "highly personal and intimate" information.  See, e.g., Painting Indus. of Hawai'i Mkt. Recovery Fund v. Alm, 69 Haw. 449, 453, 746 P.2d 79, 82 (1987); State of Hawai'i Org. of Police Officers v. Soc'y of Prof'l Journalists - Univ. of Hawai'i Chapter [SHOPO v. SPJ], 83 Hawai'i 378, 398, 927 P.2d 386, 406 (1996). Generally, "highly personal and intimate" information may include "medical, financial, educational, or employment records." Painting Indus., 60 Haw. at 453, 746 P.2d at 82; see, e.g., Nakano, 68 Haw. at 148, 706 P.2d at 819 (recognizing that "the people of Hawai'i have a legitimate expectation of privacy where their personal financial affairs are concerned"); SHOPO, 83 Hawai'i at 399, 927 P.2d at 407 (recognizing that "generally, personnel records may contain information that, if disclosed, would constitute an invasion of privacy").

While general conceptions of privacy may provide a useful template for a person's reasonable expectations, these expectations will necessarily differ on a case-by-case basis, depending on the person and the topic of discussion.  As Civil

30

Beat correctly points out, "[p]rivacy is not an absolute concept[.]" Some circumstances may reduce or perhaps entirely defeat the legitimacy of a person's expectation of privacy in certain information.

In Nakano, we recognized generally that people "have a legitimate expectation of privacy" in information concerning their "personal financial affairs." 68 Haw. at 148, 706 P.2d at 819. However, we recognized that this expectation will be qualified in the presence of other factors, and that reasonable expectations will depend on the person claiming the interest. See id. at 148-49. Specifically, we noted:

> [W]e cannot say an employee of the State or any of its political subdivisions may reasonably expect that his interest in avoiding disclosure of his financial affairs is protected to the same extent as that of other citizens, for the convention that proposed an affirmation of "the right of confidentiality" also authored constitutional language subjecting him to a code of ethical conduct. Consequently, the constitution now compels him to "make confidential financial disclosures" if he is a public official with "significant discretionary or fiscal powers." Moreover, these disclosures must "include, but not be limited to, sources and amounts of income, business ownership, officer and director positions, ownership of real property, debts, creditor interests in insolvent businesses and the names of persons represented before government agencies."
>
> That any expectation of financial privacy a public official in the above category may have possessed has been qualified by Article XIV needs no belaboring.

Id. at 148-49, 706 P.2d at 819 (citations and footnotes omitted).

Thus, reasonable expectations of privacy may be affected by a person's level of discretionary and fiscal

31

authority in government.  See id.; see also OIP Op. No. 04-07, at
6.  For example, with regard to a then-President of the
University of Hawai'i (UH), the OIP pointed out that "President
Dobelle's privacy interest is substantially diminished . . . by
virtue of his position as President of UH."  OIP Op. No. 04-07,
at 6.  The OIP explained:

> More specifically, it is patently clear that President
> Dobelle is one of the more prominent members of our
> community.  He is the CEO of the State's only public
> system of higher education, an entity that enjoys
> semi-autonomous status, and oversees over 45,000
> students on three university campuses and seven
> community college campuses and a budget of
> approximately $660 million.  [The University] also
> receives millions of dollars in research and other
> types of grants, employs thousands, from
> administrators and professors to custodians, and
> significantly contributes to our State's economy.
> Moreover, President Dobelle is one of the most highly
> compensated State employees, earning $442,000 per year
> and residing at College Hill.

Id. at 6-7.

Reasonable expectations of privacy will also be
affected by existing laws and regulations concerning the matters
at issue.  See Nakano 68 Haw. at 148-49, 706 P.2d at 819.  An
example of this principle may be found in the UIPA, which
provides that a person does not have a significant privacy
interest in "[i]nformation disclosed under section 92F-
12(a)(14)."  HRS § 92F-14(b)(4)(A).  Section 92F-12(a)(14)
provides for the mandatory disclosure of certain types of
government employment information, such as employee names, job
titles, and salary information.  Because this information must be
disclosed by law, a person cannot claim a reasonable expectation

of privacy in information disclosed pursuant to this law.

A similar principle was recognized in <u>Painting Industry</u>, a case concerning a government contractor's claimed privacy interest in his settlement agreement with the State.  <u>See</u> 69 Haw. at 452, 746 P.2d at 81.  The contractor sought to prevent disclosure of the settlement agreement because, as he claimed, public disclosure of the agreement would raise the inference that the contractor "may have violated state statutes in the past."  <u>Id.</u>  While we held that the agreement did not contain "highly personal and intimate information," we recognized, "[a]dditionally, if [the Department of Commerce and Consumer Affairs] had decided to hold a formal disciplinary hearing before the Contractor's Licensing Board, this information would have been public under HRS § 444-18."  <u>Id.</u> at 453, 746 P.2d at 82.  Thus, we held that the contractor did not have a legitimate privacy interest in the settlement agreement.  <u>Id.</u>

Finally, a person cannot claim a legitimate privacy interest in information that has already been made public.  <u>See, e.g.</u>, OIP Op. No. 03-16, at 5; OIP Op. No. 06-07, at 4 ("[A] matter no longer affects the privacy of the individual where it has been made public[.]"); <u>see also</u> Op. Att'y Gen. No. 94-01, at 4 ("When information which would otherwise be required to be kept confidential under the public record law is already public, there is no privacy interest to protect.").  For example, with regard to a then-head football coach at the University of Hawai'i, the OIP addressed whether employment information already disclosed by

33

the University and reported by the media could be withheld on the basis of privacy. See OIP Op. No. 03-16, at 5. The OIP noted:

> There clearly is no basis to withhold information that [the University] previously released. In our opinion, any argument to the contrary would be frivolous. Once [the University] voluntarily disclosed the information, whether to one member of the public or to the media, it cannot later claim that the same information is somehow protected from disclosure. An agency certainly is not permitted to discriminate by disclosing records to some and withholding the same records from others. Stated another way, by its voluntary disclosure of the information, [the University] waived any argument that the same information is protected from future disclosure.

Id.

The OIP acknowledged that "there may be an issue as to whether statements in the press, without official confirmation, likewise serve to waive an agency's right to withhold the information." Id. However, the OIP determined that the issue was inapplicable, as the information concerning terms of the contract "was confirmed by Coach Jones' agent." Id. The OIP recognized:

> The bell, therefore, has "rung" with respect to those terms, and the bell cannot be "unring" [sic] by denying access to those same terms. In other words, withholding the information previously made public serves no legitimate purpose because [the University] cannot force the public to forget or pretend to forget that information.

Id.

These factors, while not exhaustive, should be considered by government boards and commissions - and by reviewing courts - to determine whether a legitimate privacy interest is at stake.

34

## C.    Counts 5 and 6

The circuit court erred in dismissing Counts 5 and 6. In these counts, Civil Beat alleged that the Commission violated the Sunshine Law at the January 4, 6, and 18, 2017 executive meetings.  In addition to declaratory relief, Civil Beat sought the release of any recordings or minutes from the executive sessions, and for the circuit court to invalidate the Commission's retirement agreement with Kealoha, pursuant to HRS § 92-11.[10]  The circuit court improperly applied a heightened pleading standard to dismiss these counts.  As set forth below, we vacate the circuit court's judgment as to Counts 5 and 6, and remand them for further proceedings.

In Counts 5 and 6, Civil Beat alleged that the Commission violated HRS § 92-5(b), which provides, "In no instance shall the board make a decision or deliberate toward a decision in an executive meeting on matters not directly related to the purposes specified [for closing the meeting]."  Civil Beat argued that at some point during the Commission's three days of closed deliberations regarding Kealoha's "Status," the Commission's discussions "exceeded the scope of any permissible [exception]."

In both counts, Civil Beat primarily sought to establish that the personnel-privacy exception was not a

---

[10]    HRS § 92-11 (2012) provides, "Any final action taken in violation of sections 92-3 and 92-7 may be voidable upon proof of violation.  A suit to void any final action shall be commenced within ninety days of the action."

"permissible" exception because "matters affecting privacy" were not involved in the Commission's deliberations.[11]  Civil Beat then claimed, on information and belief, that portions of the January 4, 6, and 18 executive sessions "were not 'directly related' to 'consideration of matters affecting privacy.'"[12]  Civil Beat also claimed that portions of the January 4, 6, and 18 executive sessions "were not 'directly related' to questions for the Commission's attorney 'pertaining to the board's powers, duties, privileges, immunities, and liabilities."

In response to Counts 5 and 6, the Appellees argued that the Commission "acted lawfully in closing its discussions regarding the Chief of Police's status with HPD and possible retirement to protect privileged attorney-client information and the Chief of Police's privacy interests."  They argued that Civil Beat did not state a valid cause of action and that Counts 5 and 6 should be dismissed because the factual allegations therein were "formulaic, conclusory, and based on pure speculation."  The Appellees asserted that Civil Beat was attempting "to discover the entire factual bases of its claims through discovery in this matter, which is impermissible."

---

[11]    Under this argument, the attorney-client exception would be the only permissible exception, and the scope of permissible discussions in executive session would be more narrow.

[12]    We note that this reference to the personnel-privacy exception incorrectly highlights its "purpose" to be "consideration of matters affecting privacy."  To be clear, the purpose is "to consider the hire, evaluation, dismissal, or discipline of an officer or employee or of charges brought against the officer or employee, where consideration of matters affecting privacy will be involved."  HRS § 92-5(a)(2) (emphasis added).

36

At the hearing on the motion to dismiss, Civil Beat's counsel said that while Counts 3 and 4 "deal with the privacy balancing test[,] Counts 5 and 6 are more about whether or not the public has a cause of action when [there is] an improper executive session."  Counsel argued that the Appellees "fault the complaint for not alleging . . . what happened in the executive session," even though Civil Beat "can't know what happened" because the meeting was closed to the public.

Further, the circuit court asked Civil Beat's counsel whether Counts 5 and 6 could proceed if the court rejected the privacy balancing test.  The following exchange took place:

> THE COURT:   With respect to Counts 5 and 6, they rely in large part on the claims in Counts 3 and 4 that you apply a balancing test when the court reviews the allegations.
>
> [COUNSEL]:   Yes.
>
>              . . .
>
> THE COURT:   So if the court were to agree with the defendants' position that the balancing test that you allege in Counts 3 and 4 does not apply to the meeting, it applies to the documents, then . . . what would remain in Counts 5 and 6 to establish that there was a claim for an improper executive session?
>
> [COUNSEL]:   I think it still would be a question of whether or not the entire executive session was proper, . . . [and] that just can't be resolved on a motion to dismiss. . . .  [E]ven if they had a proper invocation of the personnel exception, even if they had a proper invocation of the attorney-client privilege, they still would have to show in some fashion, which often involves in camera review, they would have to show in

> some fashion that the entire set of
> meetings was properly within the scope of
> the executive session.

THE COURT: Okay. Thank you.

In its written order, the circuit court dismissed Counts 5 and 6 because they "set forth conclusory, rather than factual, allegations[.]" This was improper. Because Civil Beat's claims satisfied the notice pleading standard applicable in Hawai'i courts, the circuit court erred in dismissing Counts 5 and 6 pursuant to HRCP Rule 12(b)(6). See Bank of America, N.A. v. Reyes-Toledo, 143 Hawai'i 249, 263, 428 P.3d 761, 775 (2018).

To overcome an HRCP Rule 12(b)(6) motion to dismiss, a complaint must satisfy HRCP Rule 8(a) and our traditional notice pleading standard. See id. The pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," HRCP Rule 8(a)(1) (2000), where the statement "gives the defendant fair notice of the claim and the ground upon which it rests," Reyes-Toledo, 143 Hawai'i at 258, 428 P.3d at 770 (quoting Hall v. Kim, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." Id. (quoting Hall at 221-22, 491 P.2d at 545).

Civil Beat alleged that portions of the January 4, 6, and 18 executive sessions "were not 'directly related' to 'consideration of matters affecting privacy,'" or "to questions

38

for the Commission's attorney 'pertaining to the board's powers, duties, privileges, immunities, and liabilities." Taking the allegations in the complaint to be true, as we must when reviewing a motion to dismiss, Civil Beat has sufficiently alleged a violation of HRS § 92-5(b).

These allegations establish an issue of fact regarding whether the Commission's deliberations during the January 4, 6, and 18 executive meetings remained within the narrowly-tailored scope of the personnel-privacy and attorney-client exceptions. Civil Beat provided notice that, if the discussions were not within this scope, then Civil Beat would have a claim against the Commission for violating the Sunshine Law, entitling Civil Beat to relief. Thus, Civil Beat's claims in Counts 5 and 6 should not have been dismissed for failure to state a claim. We vacate the judgment to this extent and remand Counts 5 and 6 for further proceedings consistent with the following instructions.

D.    Instructions and Relevant Considerations on Remand

1.    Indispensable Parties

"Absence of indispensable parties can be raised at any time[,] even by a reviewing court on its own motion." Haiku Plantations Ass'n v. Lono, 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (quoting Filipino Fed. of America v. Cubico, 46 Haw. 353, 369, 380 P.2d 488, 497 (1963)). We raise the issue of Kealoha's absence sua sponte to ensure due process in the proceedings on remand. See 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1602 (3d ed. 2001)

(hereinafter "Wright & Miller") ("The failure of the court to protect those not before it may amount to a violation of due process should the judgment in the action have the effect of destroying their rights.").[13]

Before proceeding to the merits of Counts 5 and 6, the circuit court must order Kealoha to be joined as a party to the action. See HRCP Rule 19(a) (2000). If Kealoha cannot be so joined, the circuit court must consider whether the action may proceed in any form among the parties presently before the court, or whether Counts 5 and 6 must be dismissed altogether. See HRCP Rule 19(b).

HRCP Rule 19 addresses the joinder of a nonparty determined to be necessary for a just adjudication. We have generally recognized a two-step analysis under Rule 19, corresponding with subsections (a) and (b) of this rule:

> First, the court must determine whether an absent party should be joined if feasible according to the factors listed in subsection (a). Second, if the party meets the requirements under subsection (a) but it is not feasible to join the party to the lawsuit, the court must proceed to Rule 19(b) to determine whether it may decide the case without the nonparty. If the court must dismiss the lawsuit rather than moving forward without the absent party, the nonparty is labeled "indispensable."

Marvin v. Pflueger, 127 Hawai'i 490, 499, 280 P.3d 88, 97 (2012) (citations and footnote omitted).

---

[13] While this treatise addresses the Federal Rules of Civil Procedure, HRCP Rule 19 is "in all relevant aspects substantively identical to the federal rule[.]" Kellberg v. Yuen, 135 Hawai'i 236, 251 n.11, 349 P.3d 343, 358 n.11 (2015) (quoting Marvin v. Pflueger, 127 Hawai'i 490, 499 n.11, 280 P.3d 88, 97 n.11 (2012)).

Under subsection (a) of Rule 19, an absent person will be necessary for a just adjudication if one or more of the following apply:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

HRCP Rule 19(a).

"Rule 19 is intended to protect the absentee from prejudice, to protect those made parties from harassment by successive suits, and to protect the courts from being imposed upon by multiple litigation." Wright & Miller § 1609. The first of these policies is reflected in the standard set forth in subdivision (a)(2)(A), which requires joinder of a nonparty whose interests are at issue and may be harmed if the case is resolved in that person's absence. See id. § 1604 (recognizing with regard to subsection (a)(2)(A) that "[a] standard of this type has been used by federal courts in the past on many occasions to determine questions of indispensability[,]" and noting that "reluctance to affect the rights of persons not before the court has been a prominent factor in the development of the indispensability principle").

Based on the subject matter and claims for relief in Counts 5 and 6, Kealoha is a party to be joined if feasible

41

pursuant to Rule 19(a)(2)(A).  Counts 5 and 6 directly concern whether Kealoha had a legitimate privacy interest at stake in the Commission's discussions about the Target Letter and his retirement.  Because this case concerns the subject of Kealoha's privacy, he would appear to have "an interest relating to the subject of the action."  HRCP Rule 19(a)(2); see Kellberg v. Yuen, 135 Hawai'i 236, 252 n.13, 349 P.3d 343, 359 n.13 (2015) ("[A]n absent party may be silent and still 'claim an interest' under Rule 19(a) because ' "claims an interest" in this context means nothing more than appears to have such an interest.'" (Citation omitted)).[14]

Further, "as a practical matter," Kealoha's interests may be impaired or impeded by the disposition of Counts 5 and 6 in his absence.  HRCP Rule 19(a)(2)(A).  In both counts, Civil Beat requested the release of audio recordings and minutes from the Commission's January 4, 6, and 18 executive meetings. Because Kealoha could claim a privacy interest in the details of these discussions, the public release of these details may impede attempts to keep this information private.

Additionally, Civil Beat sought to invalidate Kealoha's retirement agreement with the Commission.  Resolving this in Civil Beat's favor would certainly appear to "impair or impede"

_____

[14]    This is not to be construed as a determination that Kealoha indeed had a legitimate privacy interest at stake, as we reserve this question for the circuit court on remand.  "[T]he first step of the Rule 19 analysis asks whether the absent party 'claims an interest relating to the subject of the action[,]' not whether the absent party has a vested interest." Kellberg, 135 Hawai'i at 252 n.13, 349 P.3d at 359 n.13 (quoting HRCP Rule 19(a)).

Kealoha's ability to protect his contractual interests.  See, e.g., Kellberg, 135 Hawai'i at 252-53, 349 P.3d at 359-60 ("[I]nvalidating the subdivision would 'impair or impede' the lot owners' ability to protect their respective property interests."); Asato v. Procurement Policy Bd., 132 Hawai'i 333, 356, 322 P.3d 228, 251 (2014) ("[G]enerally, the parties to [a] contract must be made parties to a suit in which the contract is challenged.").

Although Rule 19(a) plainly applies, neither party considered the issue below or on appeal.  Contrary to Rule 19(a), Civil Beat did not join Kealoha as a party to this litigation. See HRCP Rule 19(a) ("A person who is subject to service of process shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest[.]" (Emphasis added)).  Civil Beat also did not comply with Rule 19(c), which requires a pleading to "state the names, if known to the pleader, of any persons as described in subdivisions (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined."[15]

_____

[15]     In their motion to dismiss, the Appellees did not challenge the pleadings for failure to join a party under Rule 19.  See HRCP Rule 12(b)(7). Thus, if the Appellees were to subsequently raise a defense pursuant to Rule 19(a), it would be deemed waived.  See Marvin, 127 Hawai'i at 501-02, 280 P.3d at 99-100 (recognizing that pursuant to HRCP Rule 12, the defense of failure to join a necessary party under Rule 19(a) is waived if it is not timely raised in a defendant's answer or in a pre-answer motion.); see also Kellberg, 135 Hawai'i at 251 n.12, 349 P.3d at 358 n.12 ("The timing for raising a
(continued...)

Given the posture of this case and the circumstances of our Rule 19 review, we instruct the circuit court on remand to order Kealoha to be joined as a party pursuant to HRCP Rule 19(a).  If Kealoha cannot be so joined, the circuit court must analyze the factors under Rule 19(b) to determine whether "in equity and good conscience" the action may proceed in any form among Civil Beat and the Appellees, or whether it must be dismissed.  HRCP Rule 19(b).

### 2.    Analysis under HRS § 92-5(b).

The circuit court's analysis on remand will concern whether the Commission held a closed meeting that exceeded the scope of any permissible exception, such that the Commission was obligated to reconvene in an open meeting.  See HRS § 92-5(b).

The legislature amended the Sunshine Law in 1985 to, among other things, prohibit boards from "mak[ing] a decision or deliberat[ing] toward a decision in an executive meeting on matters not <u>directly related</u> to the purposes specified" for closing the meeting.  1985 Haw. Sess. Laws Act 278, § 3 at 592 (emphasis added).  This established a narrower standard in section 92-5(b) than earlier draft language, which would have allowed deliberations on matters "reasonably related" to the purpose of the executive session.  Conf. Comm. Rep. No. 36, in 1985 Senate Journal, at 867; Conf. Comm. Rep. No. 41, in 1985

---

[15](...continued)
defense under Rule 19 is critical.").  Here, waiver is not at issue, as the Appellees have not asserted a defense or objection based on Rule 19.

House Journal, at 907.

Section 92-5(b) aligns with other Sunshine Law provisions requiring exceptions to the open meeting requirements to be "strictly construed against closed meetings."  HRS § 92-1(3); see HRS §§ 92-4, 92-5.  In interpreting these provisions, the OIP has explained that "when any board discussion extends beyond the narrow confines of the specified executive meeting purpose, which purpose must be strictly construed, the board must reconvene in a public meeting to continue the discussion."  OIP Op. No. 05-11, at 5.  The OIP has also explained:

> [A] board may deliberate and decide matters in an executive meeting only to the extent necessary to execute the lawful purpose for which the executive meeting is convened and to maintain the confidentiality of the matters intended to be protected by the exception provided.  A board, thus, must reconvene in an open meeting to make or deliberate toward a decision to the extent it may do so without defeating the lawful purpose for which the executive meeting may be held.

Id. at 6.

Based on Civil Beat's allegations in Counts 5 and 6, the circuit court should first determine whether the personnel-privacy exception was a permissible exception for the January 4 meeting, continued to January 6, and for the January 18 meeting. This determination will inform the nature of the court's second inquiry, which is whether the Commission's discussions at each meeting remained directly within the scope of the personnel-privacy exception, if permitted, or were otherwise directly within the scope of the attorney-client exception.

45

### a.   Permissibility of the Personnel-Privacy Exception

To determine whether the personnel-privacy exception applied to the January 4 and 6 executive meetings, or the January 18 executive meeting, the circuit court must determine (1) whether the Commission considered Kealoha's "hire, evaluation, dismissal, or discipline," or charges against him, and (2) whether the considerations involved matters in which Kealoha had a legitimate privacy interest.  HRS § 92-5(a)(2). The circuit court may only resolve this after further development of the facts and after providing the parties the opportunity to assert their respective positions.

Based on the limited factual record before this court, we make the following preliminary observations.

First, a "retirement" is not within the plain meaning of "hire, evaluation, dismissal, or discipline," or "charges." HRS § 92-5(a)(2).  The allegations in the complaint provide that the Commission, which had already come to an "agreement in principle" on Kealoha's retirement on January 6, entered into an executive session on January 18 to reach a formal agreement as to Kealoha's retirement.  It is thus unclear, based on the limited record before us, whether the January 18 executive session in fact involved considerations within the scope of the first prong of the personnel-privacy exception.  Moreover, as to the "privacy" prong, because no legitimate privacy interest may be held in matters already public, Kealoha's retirement would not appear to be within the scope of "matters affecting privacy" at

46

the January 18 executive session.

Similarly, the circuit court should consider Civil Beat's allegations regarding the public nature of the Target Letter when determining what matters discussed at the January 4 and 6 executive sessions affected Kealoha's legitimate privacy interests. The court should further consider other circumstances that would limit or perhaps diminish Kealoha's reasonable expectations of privacy in certain information, given his then-role as a prominent public servant at the head of the State's largest police force, and given any other relevant considerations regarding the matters under discussion.

**b.    Whether the Discussions Remained Within the Scope of the Permissible Exceptions**

If the circuit court finds that the Commission had a proper basis for invoking the personnel-privacy exception at the executive sessions under review, the court must conduct a two-step analysis. First, the court will determine to what extent the Commission's discussions and deliberations therein fell within the scope of the personnel-privacy exception. That is, the court must determine to what extent the Commission's discussions and deliberations were "directly related to" the purpose of closing the meeting pursuant to the personnel-privacy exception. HRS § 92-5(b).

The personnel-privacy exception allows boards to discuss the "hire, evaluation, dismissal, or discipline" of personnel, or "charges brought against" personnel, without the

47

risk of invading the person's privacy.  HRS § 92-5(a)(2).  The purpose of this exception is to protect individual privacy rights.  Thus, on remand, the circuit court must examine the meeting minutes in-camera to determine to what extent the Commission's discussions were "directly related to" this purpose.  HRS § 92-5(b).

Second, if portions of the executive meeting minutes fell outside the scope of the personnel-privacy exception, the circuit court will then alternatively consider the attorney-client exception.  The court must determine whether the remaining portions of the executive meeting were "directly related to" the purpose of "consult[ing] with the board's attorney on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities."  HRS § 92-5(a)(4).

If the circuit court finds that the personnel-privacy exception was not properly invoked for a given meeting and was therefore impermissible, then the court must proceed directly to the second step of the above analysis to identify whether any portions of the meeting exceeded the scope of the attorney-client exception.

If any portions of the meetings at issue exceeded the scope of any permissible exception, then this will indicate that the Commission did not comply with section 92-5(b).

**3.    Scope of the Attorney-Client Exception**

As discussed above, the circuit court must resolve whether the Commission held a closed meeting that exceeded the

48

scope of any permissible exception, and this analysis will involve an in-camera review of the January 4, 6, and 18 executive meeting minutes to determine whether portions of the meeting fell outside the scope of the Sunshine Law's attorney-client exception under HRS § 92-5(a)(4).  See HRS § 92-5(b).  Because our case law has not yet construed the scope of this exception, we take this opportunity to provide guidance.

In the circuit court's order granting the Appellees' motion to dismiss, the court ruled that "the Commission had the authority to and did meet in executive session to preserve its attorney-client privilege."  We clarify that a board's authority to meet in executive session to consult with its attorney pursuant to HRS § 92-5(a)(4) is narrower in scope than the attorney-client privilege, as demonstrated by the plain language and legislative history of the attorney-client exception.

The attorney-client privilege protects "confidential communications" between a client and the client's attorney "made for the purpose of facilitating the rendition of professional legal services to the client[.]"  Hawaii Rules of Evidence (HRE) Rule 503(b); see also Save Sunset Beach Coal. v. City and Cty. of Honolulu, 102 Hawaiʻi 465, 484, 78 P.3d 1, 20 (2003) ("The attorney-client privilege is codified in the Hawaiʻi Rules of Evidence (HRE) Rule 503[.]").  A confidential communication is "[a] communication . . . not intended to be disclosed to third persons other than those to whom disclosure would be in furtherance of the rendition of professional legal services to

the client or those reasonably necessary for the transmission of the communication."  HRE Rule 503(a)(5).

Unlike the attorney-client privilege, the Sunshine Law's attorney-client exception protects communications relating only to "questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities."  HRS § 92-5(a)(4).  These specific conditions demonstrate that the attorney-client exception is not equivalent in scope to the attorney-client privilege.

This has not always been the case.  When the Sunshine Law was first enacted, a board was permitted to enter into an executive session "[t]o consult with [its] attorney[.]"  1975 Haw. Sess. Laws Act 166, § 1 at 365 (emphasis added).  This original language allowed boards to engage in confidential communications with their attorneys on a broad range of matters.

During the 1985 legislative session, S.B. 1413 was introduced for the "purpose of . . . afford[ing] the public more participation in governmental open meetings and more access to public records."  S. Stand. Comm. Rep. No. 714, in 1985 Senate Journal, at 1196.  In order "[t]o make government as open as possible to the public to protect the public interests," members of the Senate declared that "strengthening of the Sunshine Law is necessary."  Id.  To strengthen the Sunshine Law, the bill proposed to amend the attorney-client exception to "require that closed meetings with the board's attorney be limited to matters relating to an actual, threatened or proposed lawsuit in which

the board is a party[.]"  Id. (emphasis added).

In reviewing this proposed language, members of the House Judiciary Committee expressed the following concern:

> [T]he amendment pertaining to the board consulting with their attorney attempts to abrogate or severely limit the commonly recognized attorney-client privilege.  There may be instances when a board may need to consult with their attorney on matters other than pending or future litigation.  Your Committee felt boards should be able to consult with their attorney in private, just as private parties do.  If a board consulted with its attorney in an open meeting the privilege, or confidentiality of their communications would be lost.  Without the confidentiality, a board may not adequately inform their attorneys of facts and as a result may receive misguided advice.  Your Committee was not willing to accept the premise that the client is the public and therefore the public should be able to attend meetings when the board consulted with its attorney.

H. Stand. Comm. Rep. No. 889, in 1985 House Journal, at 1424.

The House Judiciary Committee proposed draft language to "allow a board to meet in executive meeting with their attorney to consult on their legal responsibilities, on legal issues or on actual or proposed lawsuits."  Id. (emphasis added). This version expanded the scope of the attorney-client exception beyond the version proposed by the Senate, as the House draft added "legal responsibilities" and "legal issues" to the list of topics that could be kept confidential.

After the House proposed this broader language, the bill was revised again in conference.  The Conference Committee amended the draft bill to "permit the board to consult with its attorneys on questions and issues pertaining to the board's powers, duties, privileges, immunities, and liabilities."  Conf.

51

Comm. Rep. No. 36, in 1985 Senate Journal, at 867; Conf. Comm. Rep. No. 41, in 1985 House Journal, at 907. This language was intended to "limit the situations in which a board could call an executive meeting with its attorney." Conf. Comm. Rep. No. 36, in 1985 Senate Journal, at 867; Conf. Comm. Rep. No. 41, in 1985 House Journal, at 907. This language strikes a middle ground between the House and Senate versions, and in any event, is far narrower than the attorney-client privilege.

The OIP has provided further guidance as to the scope of the attorney-client exception. It has advised that "a board is authorized to consult with its attorney in an executive meeting convened for any of the purposes listed in section 92-5(a), HRS, so long as the consultation is necessary to achieve the authorized purpose of the executive meeting." OIP Op. No. 03-17, at 4. The OIP recognized that a "board may need its attorney's assistance to explain the legal ramifications of various courses of conduct available to the board." Id.; see also Cty. of Kaua'i v. Office of Info. Practices, 120 Hawai'i 34, 46, 200 P.3d 403, 415 (App. 2009) (determining that the board's attorney "consulted . . . consistently and at length throughout the session regarding the procedure to follow in conducting an investigation of KPD and that . . . consultation . . . largely concerned the ramifications of the Sunshine Law on Council's investigation, a legal question").

The OIP has also recognized that "consultation" within the scope of the attorney-client exception may include helping

the board limit its discussion to publicly noticed items on the board's agenda for that particular meeting. See OIP Op. No. 03-17, at 5. The OIP advised that an attorney's assistance to prevent the board "from inadvertently straying into discussion[s] or deliberation[s] of a topic not directly related to the executive meeting's purpose[] . . . would be consulting" under HRS § 92-5(a)(4). Id. In other words, the attorney-client exception may apply to communications between a board and its attorney to ensure compliance with HRS § 92-5(b).

Reviewing courts, as well as boards and commissions, should understand that an attorney is not a talisman, and consultations in executive sessions must be purposeful and unclouded by pretext. At all times, the "attendance [of] the [board]'s attorneys at executive meetings must conform to [the] policy" of requiring "policy-making . . . [to] be conducted in public meetings, to the extent possible." OIP Op. No. 03-12 at 10 (citing HRS § 92-1). As such, "once the [board] receives the benefit of the attorney's advice, it should discuss the courses of action in public, and vote in public, unless to do otherwise would defeat the lawful purpose of having the executive meeting." Id. Moreover, "[i]f a non-board member, including the board's attorney remains in an executive meeting after his or her presence is no longer required for the meeting's purpose, the executive meeting may lose its 'executive' character." Id. at 6.

The circuit court must consider and strictly apply these rules when conducting in-camera review of the minutes from

53

the Commission's January 4, 6, and 18 executive meetings.

### 4.   Potential Remedies

If the circuit court finds that the Commission violated section 92-5(b), the court may award any appropriate remedy.  See HRS § 92-12(b) ("The circuit courts of the State shall have jurisdiction to enforce the provisions of this part by injunction or other appropriate remedy.").

In addition to any other remedy the court may find appropriate under the circumstances, the court shall order the Commission to release the applicable executive meeting minutes, either in full or in redacted form, if a violation is found.  The Sunshine Law requires government boards to "keep written or recorded minutes of all meetings."  HRS § 92-9(a).  These minutes must be publicly available, unless "such disclosure would be inconsistent with section 92-5."  HRS § 92-9(b).  Where an executive meeting, or a portion thereof, unlawfully took place behind closed doors, any minutes reflecting the discussions and deliberations that should have taken place openly will be subject to the minutes disclosure requirement in section 92-9(b).[16]

Moreover, while the Sunshine Law will allow a board to withhold executive meeting minutes, it "recognizes that, at a

---

[16]     Prior to July 1, 2018, section 92-9(b) provided, "The minutes shall be public records and shall be available within thirty days after the meeting[.]"  In the 2017 legislative session, the legislature amended section 92-9(b) to provide, "The minutes shall be made available to the public by posting on the board's website or, if the board does not have a website, on an appropriate state or county website within forty days after the meeting[.]"  2017 Haw. Sess. Laws Act 64, § 4 at 334 (emphasis added).

future point in time, the need to maintain the confidentiality of information contained in an executive meeting's minutes may end." OIP Op. No. 06-07, at 3. "[M]inutes of executive meetings may be withheld so long as their publication would defeat the lawful purpose of the executive meeting, but no longer." HRS § 92-9(b) (emphasis added). If the circuit court determines that the Commission lawfully met in executive session pursuant to both the personnel-privacy and attorney-client exceptions, and that the Commission's discussions in executive session were "directly related" to these exceptions, HRS § 92-5(b), portions of the meeting minutes may still be subject to disclosure under section 92-9(b). See OIP Op. No. 06-07, at 4 ("[F]or an executive meeting convened to protect an employee's privacy interest, when and to the extent matters considered would no longer affect that person's privacy, the minutes or portions of the minutes reflecting those matters must be made available to the public.").

Thus, for example, any portions of the executive meeting minutes concerning information that has already been made public by the Commission or its members must be made publicly available. See id. at 1-2 (concluding that disclosure of executive meeting minutes would not defeat the "executive meeting's lawful purpose of protecting the privacy interests of Dr. Shon" because, among other things, the "[board]'s decision to

not continue Dr. Shon's appointment was made public").[17]

Finally, so long as Kealoha is joined as a party, if the circuit court finds that the Commission violated the Sunshine Law's open meeting provision at the January 18, 2017 meeting, the court may void the Commission's retirement agreement with Kealoha.  See HRS § 92-11 ("Any final action taken in violation of sections 92-3 and 92-7 may be voidable upon proof of violation.  A suit to void any final action shall be commenced within ninety days of the action.").

"HRS § 92-3 or § 92-7 must be violated in order to invoke the voidability provision."  Kanahele v. Maui Cty. Council, 130 Hawaiʻi 228, 257, 307 P.3d 1174, 1203 (2013).  In Kanahele, we recognized the ICA's conclusion that "interaction among board members that does not fall within HRS § 92-2.5

---

[17]    Civil Beat argues that OIP Opinion 06-07 establishes that the analysis for determining whether a meeting was properly closed under the personnel-privacy exception is the same analysis for determining whether a record may be withheld pursuant to the UIPA's privacy exception.  However, this opinion did not address an alleged violation of the Sunshine Law.  At issue in OIP Opinion 06-07 was a request for executive meeting minutes for a meeting closed by the Board of Education pursuant to the personnel-privacy exception.
        The OIP held that, for purposes of disclosing the minutes of an executive meeting, "a matter reported in the minutes affects the privacy of an individual if it is one that would generally be protected under the UIPA." OIP Op. No. 06-07, at 4.  When charged with administering the Sunshine Law, the Attorney General similarly looked to section 92F-13(1) to determine the standard for disclosing executive meeting minutes pursuant to a UIPA records disclosure request.  Op. Att'y Gen. No. 94-01, at 2.
        We do not consider these opinions palpably erroneous for referring to the UIPA, as they were limited to circumstances related to the disclosure of meeting minutes.  See Cty. of Kauai v. Office of Info. Practices, 120 Hawaiʻi 34, 43, 200 P.3d 403, 412 (App. 2009) (concluding that it was proper to analyze an issue concerning disclosure of executive meeting minutes "according to both HRS Chapters 92 and 92F").  As such, these opinions do not suggest that the UIPA's disclosure standard must be applied to determine whether an executive meeting was properly convened.

constitutes a 'closed meeting,' or otherwise violates the open meetings requirement under HRS § 92-3." Id. at 257-58, 307 P.3d at 1203-04. We noted that "[t]his conclusion is consistent with the position taken by the OIP, which has opined that discussions among board members concerning board business that are not permitted by HRS § 92-2.5 or violate HRS § 92-5(b), renders the board's action(s) voidable under HRS § 92-11." Id. at 258, 307 P.3d at 1204 (citations omitted). We resolved the issues in Kanahele under a different provision and thus did not determine whether a violation of HRS § 92-5(b) "constitutes a violation of § 92-3, so as to trigger the voidability analysis under § 92-11." Id.

To provide guidance on remand, we resolve that deliberations conducted in violation of section 92-5(b) also violate the open meetings requirement under section 92-3. See HRS § 92-3 ("Every meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92-4 and 92-5[.]"). As such, where discussions and deliberations are not "directly related" to a permissible exception, as required under section 92-5(b), the board's final action is voidable pursuant to section 92-11. See OIP Op. No. 05-15, at 6 (finding that serial one-on-one discussions directly violated HRS § 92-5(b), and concluding "that the Council's approval of the Resolution and matters flowing therefrom are voidable").

57

Before section 92-1 was revised in 2005, it provided that final actions "shall be voidable upon proof of wilful violation" of the open meeting and notice provisions.  HRS § 92-11 (1993) (emphasis added).  It now provides, "Any final action taken in violation of sections 92-3 and 92-7 may be voidable upon proof of violation."  HRS § 92-11 (2012) (emphasis added).  When proposing this language, the Conference Committee explained, "The purpose of this bill is to clarify the law on public agency meetings by: . . . (3) Providing that final actions taken in violation of open meeting and public notice requirements may be voidable upon mere proof of the violation."  Conf. Comm. Rep. No. 65, in 2005 House Journal, at 1007, 2005 Senate Journal, at 1794 (emphasis added).  As such, proof establishing that a violation has occurred will trigger the court's discretion to order such a remedy.

### V.  CONCLUSION

For the reasons stated above, we affirm in part and vacate in part the circuit court's November 30, 2017 judgment entered pursuant to its November 20, 2017 order granting the Appellees' motion to dismiss.  We vacate the circuit court's dismissal of Counts 1 and 2, and resolve the issues of statutory interpretation in these counts in favor of Civil Beat.  We affirm the circuit court's resolution of Counts 3 and 4 in favor of the Appellees based purely on grounds of statutory interpretation. Because we resolve Counts 1 to 4 in the present appeal, we order no further proceedings on these matters.  We vacate the circuit

58

court's dismissal of Counts 5 and 6 and remand these counts to the circuit court for proceedings consistent with the instructions in this opinion.

| | |
|---|---|
| Robert Brian Black<br>for appellant | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Duane W.H. Pang<br>(Jessica Y.K. Wong<br>with him on the brief)<br>for appellees | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

