**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000735
20-OCT-2025
07:47 AM
Dkt. 68 SO**

NO. CAAP-22-0000735


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


WAIMANA ENTERPRISES INC.; SANDWICH ISLES COMMUNICATIONS, INC.;
PA MAKANI LLC; and CLEARCOM, INC., Plaintiffs-Appellants,
v.
DEPARTMENT OF HAWAIIAN HOME LANDS; HAWAIIAN HOMES COMMISSION;
HAWAIIAN HOMES COMMISSIONS TRUSTEES KALI WATSON,
WALTER KANEAKUA, ARCHIE KALEPA, PAULINE NAMUʻO, LAWRENCE LASUA,
MAKAI FREITAS, SANOE MARFIL, and MICHAEL KALEIKINI,
IN THEIR OFFICIAL CAPACITY, Defendants-Appellees[1]


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-22-0000617)


<u>SUMMARY DISPOSITION ORDER</u>
(By: Nakasone, Chief Judge, Wadsworth and McCullen, JJ.)

This appeal challenges the dismissal of a complaint

alleging the violation of plaintiffs' exclusive license (**License**

---

[1] Pursuant to Hawaiʻi Rules of Evidence Rule 201 and Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 43(c)(1), we take judicial notice that Kali Watson, Walter Kaneakua, Archie Kalepa, Pauline Namuʻo, Lawrence Lasua, Makai Freitas, Sanoe Marfil, and Michael Kaleikini are current Hawaiian Homes Commissions Trustees and are automatically substituted as Defendants-Appellees in place of William J. Aila, Jr., Patricia Kahanamoku-Teruya, Russell Kaupu, Randy Awo, Zachery Helm, Dennis Neves, and David B. Kaʻapu.

372) to build and operate a broadband telecommunication network on lands administered by Defendant-Appellee Department of Hawaiian Home Lands (**DHHL**). The First Amended Complaint (**FAC**) raised the following claims: breach of contract (**Count 1**), breach of the implied covenant of good faith and fair dealing (**Count 2**), breach of fiduciary duties (**Count 3**), and for declaratory relief (**Count 4**). We affirm the dismissal as to Counts 1, 2, and 4, and vacate with respect to Count 3.

Plaintiffs-Appellants Waimana Enterprises Inc. (**Waimana**), Sandwich Isles Communications, Inc. (**SIC**), Pa Makani LLC (**Pa Makani**), and Clearcom, Inc. (**Clearcom**) (collectively, **Appellants**)[2] appeal from the Circuit Court of the First Circuit's[3] (**Circuit Court**) (1) November 3, 2022 "Findings of Fact, Conclusions of Law, and Order Granting Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint Filed on July 19, 2022" (**Dismissal Order**), and (2) December 8, 2022 Final Judgment in favor of Defendants-Appellees DHHL; Hawaiian Homes Commission; Hawaiian Homes Commission Trustees William J. Aila, Jr., Patricia Kahanamoku-Teruya, Russell Kaupu, Randy Awo, Pauline Namuʻo, Zachery Helm, Dennis Neves, Michael Kaleikini, and David B. Kaʻapu's (collectively, the **DHHL Appellees**).

Appellants raise the following points of error (**POEs**): **(1)** the dismissal of Count 1 and Count 2 was erroneous because License 372 granted Appellants an "[e]xclusive possessory right" and "exclusive rights of entry to the 'premises' defined in License 372," and the Circuit Court's conclusion to the contrary was erroneous; **(2)** the 2017 Federal Communications Commission

---

[2]     SIC, Pa Makani, and Clearcom are subsidiaries of Waimana.

[3]     The Honorable Dean E. Ochiai presided.

2

(**FCC**) order "did not preempt [Appellants'] exclusive possessory right and/or exclusive rights of entry to premises," and the Circuit Court's conclusion to the contrary was erroneous; and **(3)** the dismissal of Count 3 for breach of fiduciary duties "on the grounds that [Appellants] are not Native Hawaiian Organizations under HRS § 673-2(c)" was erroneous, where the complaint satisfied "notice pleading" standards; and the Circuit Court "abused its discretion" by not allowing Count 3 to be dismissed "without prejudice."[4]  Appellants do not raise any challenge or present argument specific to Count 4.

Upon careful review of the record and the briefs[5] submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Appellants' contentions as follows.

On May 9, 1995, DHHL issued License 372 to Waimana, granting it "the exclusive right and privilege to build,

---

[4]     Appellants raised six POEs.  The three POEs we do not address challenged the application of a two-year statute of limitations to Appellants' claims (POE 3), the failure to grant the requested leave to add Hawaiian Telcom Inc. (**HTI**) as an indispensable party (POE 4), and the conclusion that the United States was an indispensable party (POE 6).  Our resolution of the first and second POEs regarding the claim of an "exclusive possessory right" and the FCC Order are dispositive, and we need not reach these remaining challenges to the Dismissal Order.

[5]     The parties submitted supplemental briefing on the effect, if any, of the federal district court's decision, Sandwich Isles Commc'ns, Inc. v. Hawaiian Telcom, Inc., Civ. Nos. 22-00426 JAO-KJM, 22-00427 JAO-KJM, 22-00428 JAO-KJM, 22-00434 JAO-KJM, 22-00435 JAO-KJM, 22-00441 JAO-KJM, 2023 WL 6378626 (D. Haw. Sep. 29, 2023), which was entered after briefing in this appeal had concluded.  The federal decision resolved Appellants' consolidated appeals from six Bankruptcy Court proceedings and determined issues relevant to this appeal, that:  (1) HTI acquired SIC's interest in License 372 through the bankruptcy trustee's sale, id. at *14; (2) SIC's interest in License 372 was not an interest in real property, id. at *15; (3) SIC's interest in License 372 was not a lease of real property, id. at **24-25; (4) SIC's interest in License 372, which was acquired by HTI, was not limited to "voice only" services, id. at *34; and (5) by acquiring SIC's interest in License 372, HTI had full rights of access to the buildings, network, and premises conferred by SIC's interest in License 372, id.

construct, repair, maintain and operate a broad band [sic] telecommunications network" on DHHL lands and a "right of entry upon the easement area" for that purpose.[6] DHHL granted License 372 to Waimana, "its legal successors and assigns, in perpetuity . . . unless sooner terminated," and waived the nominal one dollar rent. License 372 expressly prohibited any assignments of Waimana's interest in License 372 without DHHL's prior consent.[7] Waimana subsequently partially assigned portions of License 372 to its subsidiaries with DHHL's consent, as follows: to SIC in 1996, to Pa Makani in 2011, and to Clearcom in 2014,

---

[6]     The pertinent text describing the license states:

> NOW THEREFORE, LICENSOR [(DHHL)], in consideration of the services to be provided by LICENSEE [(Waimana)], and the terms, conditions and covenants herein contained on the part of LICENSEE to be kept, observed and performed, hereby grants and issues to LICENSEE, and its legal successors and assigns, the exclusive right and privilege to build, construct, repair, maintain and operate a broad band telecommunications network including poles, overhead and/or underground lines, appliances, microwave and/or other types of equipment over, across, under and throughout all lands under the administration and jurisdiction of LICENSOR, and its legal successors and assigns, including the right to trim and keep trimmed any vegetation, shrubbery, bushes or trees in the way of its lines and appurtenances, and including also the right of entry upon the easement area and adjoining land of LICENSOR for the construction, maintenance, operation and removal of LICENSEE's line and appurtenances over, across and under the LICENSE area.

(Emphases added.)

[7]     The "Assignments" prohibition stated as follows:

> 13. ASSIGNMENTS. Except as expressly provided in this LICENSE, this LICENSE is not transferable. At no time during the term of this LICENSE, shall LICENSEE assign, mortgage or pledge its interest in this LICENSE or its interest in the improvements now or hereafter erected on the premises without the prior written consent of LICENSOR, which consent will not be withheld unreasonably.

4

for provision of different types of telecommunications services, such as voice, data, and wireless.

In 2017, the FCC issued an order preempting Waimana's exclusive right to build and operate the network, finding that License 372's "exclusivity provision" banned telecommunications competition on DHHL lands in violation of the Federal Communications Act (**FCC Order**).[8]

The Dismissal Order and the FAC also reflect that after SIC defaulted on loans it obtained from the U.S. Department of Agriculture's Rural Utilities Service (**RUS**), RUS obtained a $138,557,635.82 judgment against SIC. On May 1, 2020, RUS recorded the judgment and obtained a writ of execution, levying certain SIC property that included infrastructure and equipment SIC had built and operated pursuant to License 372. These assets were later acquired by HTI through the bankruptcy trustee's sale.

Appellants' July 19, 2022 FAC alleged that "DHHL's breach of License 372 have [sic] resulted in [Appellants] not being able to charge HTI for use of [Appellants'] license

---

[8] The FCC Order stated in pertinent part:

> We therefore preempt enforcement of the exclusivity provision of the Exclusive License because it has the effect of prohibiting the ability of any entity other than [SIC] to provide telecommunications services on the Hawaiian home lands. We note that the Exclusive License also contains a provision which states that "[a]fter LICENSEE activates the existing and/or new telecommunications infrastructure, [DHHL] agrees not to allow any other telecommunications provider to use any remaining telecommunications infrastructure to continue to provide or initiate services on [DHHL's] lands." We also find it necessary to preempt enforcement of this provision to the extent that it acts as a restatement or extension of the exclusivity provision.

(First brackets added.)

easement areas and premises to pay for these beneficiary benefits[,]" i.e., the telecommunications services. Relevant to Appellants' contentions on appeal, in paragraphs 25 and 26 of the FAC, Appellants explain their interpretation of License 372 as conferring exclusive rights of possession and entry to them, more similar "to a lease than a license," as follows:

> 25. Thus, under License 372, once DHHL approves a development plan for certain HHL areas – upon completion of said development, those "lands" and "improvements" become "Premises" and "easement areas" to which Waimana, or its approved assignees, obtain exclusive possession, subject to certain lessor-type of rights such as abandonment, relocation, and/or breach.

> 26. Based on the provisions in License 372, under Hawaii law, it is more a kin [sic] to a lease than a license and regardless is an interest in real property. Kiehm v. Adams, 109 Hawaiʻi 296, 297, 126 P.3d 339, 340 (2005) [(quoting from the case)]. . . . License 372 satisfies the three factors for a lease.

With regard to the 2017 FCC Order, paragraph 46 of the FAC alleges that Appellants' "right to exclusive possession of their License 372 Easement areas survived the FCC Order."

Counts 1, 2 and 4 were premised on Appellants' claim of an exclusive right of possession. Count 1, breach of contract, alleged that DHHL breached License 372, among other things, by "allowing HTI to enter into [Appellants'] easement areas and premises."[9] Count 2, breach of good faith and fair dealing, alleged that Appellants entered into the License 372 agreement to provide telecommunications services to HHL beneficiaries "based on the promise that the easements were

---

[9] Appellants' breach of contract claim also alleged that DHHL "allow[ed] HTI to carry non-voice telecommunications via the A-2 Assets" that HTI acquired in the bankruptcy proceedings, when SIC's interest in License 372 was limited to "voice only" communications. On appeal, however, Appellants make no specific argument on this particular aspect of their claim, and we do not address it. See HRAP Rule 28(b)(7).

6

exclusive to areas they developed and used to provide said services." Count 3, breach of fiduciary duties, did not expressly rely on the claim of exclusive right to possession, and alleged a breach of the "trust fiduciary duties" that DHHL Appellees "owed" to Appellants "as native Hawaiian corporations." Count 4 requested a declaratory finding, among other things, that License 372 granted Appellants "exclusive possession of easement areas and premises of HHL that they developed."

We review the grant of a motion to dismiss de novo. Civil Beat Law Ctr. for the Pub. Int., Inc. v. City & Cnty. of Honolulu, 144 Hawai'i 466, 474, 445 P.3d 47, 55 (2019).

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Our review is strictly limited to the allegations of the complaint, which we view in the light most favorable to the plaintiff and deem to be true. However, the court is not required to accept conclusory allegations on the legal effect of the events alleged.

Id. (citation modified).

**(1)** Appellants contend the Circuit Court "erred in dismissing" Count 1 and Count 2 "on the grounds that License 372 did not grant [Appellants] any exclusive possessory right or exclusive rights of entry to the 'premises' defined in License 372." Appellants argue that the "plain and ordinary meaning of sections 17-20, 23 and 25 [in the license] is that License 372 granted [Appellants] exclusive possession and exclusive rights of access to License 372 premises except for the rights reserved by DHHL in sections 18-20." Relying on Kiehm v. Adams, 109 Hawai'i 296, 126 P.3d 339 (2005), Appellants also argue that License 372 "is akin to a lease under the *Kiehm* factors" because

"(1) License 372 sets forth the right to possess 'premises' in the sections discussed above; (2) this right is assignable in section 25; and (3) for a term in perpetuity."

A plain reading of the specified sections in License 372 does not support Appellants' argument. Section 17 regarding construction of improvements pertinently provides that: "All buildings or structures or other major improvements of whatever kind that LICENSEE constructs or erects on the premises shall remain the property of LICENSEE" - and Licensee had the right to "remove its property" from Licensor's premises prior to termination of the license. Section 18 regarding maintenance of premises pertinently provides that: "LICENSEE shall repair and maintain all improvements . . . upon the premises," "keep the premises and all improvements thereon in a strictly clean and sanitary condition," "comply with all laws . . . applicable to the premises and improvements[,]" and "allow LICENSOR or its agents, at all reasonable times, free access to the premises" to examine and monitor their condition. Section 19 regarding breach provides that if Licensee failed to comply with the conditions, "LICENSOR may, at its option, cancel this LICENSE Agreement and, thereupon, take immediate possession of the premises[.]" Section 20 regarding right of entry provides that Licensor "shall have the right to enter the Premises at all times for the purposes of conducting its own inspection and to ensure that LICENSEE is in compliance with the provisions of this LICENSE." Section 23 provides that: "The word 'premises', [sic] when it appears herein, includes and shall be deemed to include the lands described above and improvements whenever and wherever erected or placed thereon." Section 25 explained who was bound by the agreement. Nowhere in sections 17-20, 23 and

8

set forth <u>supra</u>, did DHHL grant Waimana an exclusive right of possession or exclusive right of access to the "premises" identified under License 372.

With regard to Appellants' second argument that License 372 was not a license but was "akin to a lease," the Circuit Court's conclusions that License 372 was not a lease, were correct.[10]  In <u>Kiehm</u>, the Hawai‘i Supreme Court identified three key factors for determining whether an agreement is a license or lease:  (1) "does the grantee have the right to occupy a distinct and separate part of the premises"; (2) "[i]s the grantee's right to possession assignable (suggesting a lease) or is it a personal privilege (suggesting a license)"; and (3) "[i]s the agreement for a fixed term (suggesting a lease)[.]"  109 Hawai‘i at 303, 126 P.3d at 346 (citation modified).

---

[10]     The Circuit Court concluded that:

5. License 372 is a license.

6. A license does not grant a possessory interest in land.  [(citing <u>Kiehm</u> and other supporting authority).]

7. License 372 grants [Appellants] the right to use Hawaiian home lands to build, construct, repair, maintain, and operate a telecommunications infrastructure.

8. License 372 does not grant [Appellants] any possessory or ownership rights over any portions of Hawaiian home lands, much less the right to exclude others from said lands.

. . . .

12. License 372 does not grant possessory rights over definite parcels or "premises" as defined in License 372.

13. License 372 is not for a fixed term, but rather, an indefinite period that is dependent on the nature of the licensee's use of Hawaiian home lands.

The first Kiehm factor weighs in favor of License 372 being a license and not a lease. Waimana was never granted a right to occupy a distinct and separate part of the premises. The Kiehm court noted, "[e]xclusive possession of the leased premises is essential to the character of a lease" and "[t]here must be a conveyance of a definite space in order for a lease, rather, [sic] than a license, to exist[.]" Id. (quoting 49 Am.Jur.2d Landlord and Tenant § 21). License 372 did not grant Appellants exclusive possession of DHHL lands or the premises. Rather, it granted Waimana "the exclusive right and privilege" to build and operate the telecommunications network. The second Kiehm factor also weighs in favor of License 372 being a license, not a lease. While DHHL did consent to Waimana's partial assignments of License 372 to its subsidiaries, the express terms of Section 13 precluded Waimana from assigning its interest in License 372 to any party without approval by DHHL. The third Kiehm factor also weighs in favor of License 372 being a license and not a lease, because License 372 was not for a fixed term, but was granted "in perpetuity."

Accordingly, Appellants' challenge to the dismissal of Counts 1 and 2 on grounds that License 372 granted them exclusive possessory rights and rights of entry to the "premises" lacks merit. Because these Counts and also Count 4 made these same assertions, Appellants failed to state a claim upon which relief could be granted, and the Circuit Court's dismissal on this basis was correct. See Civil Beat, 144 Hawaiʻi at 474, 445 P.3d at 55.

**(2)** Appellants contend that the FCC Order did not preempt their "exclusive possessory right and/or exclusive rights of entry to premises." Appellants' argument for this

10

second point of error is difficult to discern, as it is presented in single-spaced sentences interspersed between multiple block quotes from pleadings filed below.  Appellants claim that they are "not trying to re-litigate or attack the FCC Order," but they appear to argue that the Circuit Court erroneously interpreted the FCC Order.

This POE, like the prior point discussed above, again relies on the incorrect premise that License 372 granted Appellants exclusive possessory rights and rights of entry to the License 372 "premises," and lacks merit.

**(3)** Appellants contend that in Count 3, they sufficiently alleged that they were native Hawaiian organizations under HRS § 673-2,[11] and dismissal with prejudice, rather than without prejudice, on that count was erroneous. Appellants argue the Circuit Court erred in determining they were not "native Hawaiian organizations" with standing to sue under HRS § 673-2(c); and although they failed to exhaust their administrative remedies prior to filing suit as required by HRS § 673-3,[12] they should be allowed to dismiss their claim for breach of fiduciary duty without prejudice, so that they may pursue their administrative remedies.  These arguments have merit.

---

[11] HRS Chapter 673, entitled "Native Hawaiian Trusts Judicial Relief Act," identifies parties authorized to sue the State for breach of trust or fiduciary duties in HRS § 673-2(a), including "native Hawaiian organizations."  HRS § 673-2(c) (2016) defines "native Hawaiian organizations" to include a "corporation . . . whose purpose is to protect and uphold . . . the social and economic self-sufficiency of native Hawaiians[.]"

[12] HRS § 673-3 requires that prior to the filing of a suit in circuit court under the Chapter, the party "shall have exhausted all administrative remedies available, and shall have given not less than sixty days written notice prior to filing suit that unless appropriate remedial action is taken suit shall be filed."

In ruling on a motion to dismiss for failure to state a claim, "the appellate court's consideration is strictly limited to the allegations of the complaint, and the appellate court must deem those allegations to be true." Kealoha v. Machado, 131 Hawaiʻi 62, 74, 315 P.3d 213, 225 (2013) (citation modified). Hawaiʻi only requires notice pleading. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawaiʻi 249, 263, 428 P.3d 761, 775 (2018), overruled in part on other grounds by Wilmington Sav. Fund Soc'y, FSB v. Domingo, 155 Hawaiʻi 1, 556 P.3d 347 (2024).

Here, although the FAC did not allege a statutory basis for the breach of fiduciary duty claim in Count 3, the FAC alleged that "[Appellants] are native Hawaiian organizations as noted in License 372 and the Partial Assignments." The FAC stated that License 372 provided that "LICENSOR believes and intends that the issuance of this Exclusive 'Benefit' LICENSE will also fulfill the purpose of advancing the rehabilitation and welfare of native Hawaiians." Appellants pled they were native Hawaiian corporations, and asserted that one purpose of License 372 was to advance the rehabilitation and welfare of native Hawaiians, which this court must deem true. See Kealoha, 131 Hawaiʻi at 74, 315 P.3d at 225. The Circuit Court therefore erred in concluding that Appellants failed to sufficiently allege they were native Hawaiian organizations under Hawaiʻi's notice pleading requirements. See Civil Beat, 144 Hawaiʻi at 474, 445 P.3d at 55.

The Circuit Court also dismissed Count 3 on a separate basis, under HRS § 673-3, where Appellants failed to satisfy the pre-suit requirements of 60-days notice of their claim and exhaustion of their administrative remedies. The Circuit Court ruled that it lacked subject matter jurisdiction over this

claim.  We conclude that although dismissal on this ground was proper, the Circuit Court should have ordered a dismissal without prejudice rather than with prejudice.  See For Our Rights v. Ige, 151 Hawai'i 1, 13 n.6, 507 P.3d 531, 543 n.6 (App. 2022) ("Dismissal for lack of subject matter jurisdiction should be without prejudice, as a court is unable to reach the merits of claims over which it has no subject matter jurisdiction." (citations omitted)).

For the foregoing reasons, we affirm in part and vacate in part the Circuit Court's Dismissal Order.  The dismissal of Counts 1, 2, and 4 is affirmed.  The dismissal of Count 3 is vacated, as the dismissal should have been without prejudice.  We vacate the Final Judgment and remand to the Circuit Court for entry of an order of dismissal consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawai'i, October 20, 2025.

On the briefs:

William Meheula,
for Plaintiffs-Appellants.

Jordan A.K. Ching,
Deputy Attorney General
for Defendants-Appellees.

/s/ Karen T. Nakasone
Chief Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge